IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF ALABAMA
EASTERN DIVISION

| | | |
|---|---|---|
| PHFONECIA C. KEITH, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | CASE NO. 3:11-cv-988-TFM |
| | ) | [wo] |
| MICHAEL J. ASTRUE, | ) | |
| Commissioner of Social Security | ) | |
| | ) | |
| Defendant. | ) | |

## MEMORANDUM OPINION AND ORDER

In February, 2009, Phfonecia C. Keith ("Plaintiff" or "Keith") filed an application for a period of disability insurance benefits (DIB) alleging her disability began on July 17, 2008. (Tr. 121-24). Keith's application was denied by an administrative law judge (ALJ) on October 21, 2010. (Tr. 11-26). The Appeals Council denied her request for review, which made the ALJ's decision the final decision of the Commissioner of Social Security ("Commissioner"). (Tr. 1-4). Pursuant to 28 U.S.C. § 636 (c), the parties have consented to entry of final judgment by the United States Magistrate Judge. Judicial review proceeds pursuant to 42 U.S.C. § 405(g), and 28 U.S.C. § 636(c). After careful scrutiny of the record and briefs, for reasons herein explained, the Court AFFIRMS the Commissioner's decision.

## I. STANDARD OF REVIEW

The Court's review of the Commissioner's decision is a limited one. The Court's sole function is to determine whether the ALJ's opinion is supported by substantial

evidence and whether the proper legal standards were applied. *See Jones v. Apfel*, 190 F.3d 1224, 1228 (11th Cir. 1999); *Bloodsworth v. Heckler*, 703 F.2d 1233, 1239 (11th Cir. 1983).

"The Social Security Act mandates that 'findings of the Secretary as to any fact, if supported by substantial evidence, shall be conclusive.'" *Foote v. Chater*, 67 F.3d 1553, 1560 (11th Cir. 1995) (quoting 42 U.S.C. §405(g)). Thus, this Court must find the Commissioner's decision conclusive if it is supported by substantial evidence. *Graham v. Apfel*, 129 F.3d 1420, 1422 (11th Cir. 1997). Substantial evidence is more than a scintilla — *i.e.*, the evidence must do more than merely create a suspicion of the existence of a fact, and must include such relevant evidence as a reasonable person would accept as adequate to support the conclusion. *Lewis v. Callahan*, 125 F.3d 1436, 1440 (11th Cir. 1997) (citing *Richardson v. Perales*, 402 U.S. 389, 401, 91 S.Ct. 1420, 1427, 28 L.Ed.2d 842 (1971)); *Foote*, 67 F.3d at 1560 (citing *Walden v. Schweiker*, 672 F.2d 835, 838 (11th Cir. 1982)).

If the Commissioner's decision is supported by substantial evidence, the district court will affirm, even if the court would have reached a contrary result as finder of fact, and even if the evidence preponderates against the Commissioner's findings. *Ellison v. Barnhart*, 355 F.3d 1272, 1275 (11th Cir. 2003); *Edwards v. Sullivan*, 937 F.2d 580, 584 n.3 (11th Cir. 1991) (quoting *MacGregor v. Bowen*, 786 F.2d 1050, 1053 (11th Cir. 1986)). The Court must view the evidence as a whole, taking into account evidence favorable as well as unfavorable to the decision. *Foote*, 67 F.3d at 1560 (citing *Chester v. Bowen*, 792 F.2d 129, 131 (11th Cir. 1986). The Court "may not decide facts anew,

reweigh the evidence, or substitute [its] judgment for that of the [Commissioner]," but rather it "must defer to the Commissioner's decision if it is supported by substantial evidence." *Miles v. Chater*, 84 F.3d 1397, 1400 (11th Cir. 1997) (quoting *Bloodsworth*, 703 F.2d at 1239).

The Court will also reverse a Commissioner's decision on plenary review if the decision applies incorrect law, or if the decision fails to provide the district court with sufficient reasoning to determine that the Commissioner properly applied the law. *Keeton v. Dep't of Health and Human Servs.*, 21 F.3d 1064, 1066 (11th Cir. 1994) (citing *Cornelius v. Sullivan*, 936 F.2d 1143, 1145 (11th Cir. 1991)). There is no presumption that the Commissioner's conclusions of law are valid. *Id.*; *Brown v. Sullivan*, 921 F.2d 1233, 1236 (11th Cir. 1991) (quoting *MacGregor*, 786 F.2d at 1053).

## II. STATUTORY AND REGULATORY FRAMEWORK

The Social Security Act's general disability insurance benefits program ("DIB") provides income to individuals who are forced into involuntary, premature retirement, provided they are both insured and disabled, regardless of indigence.[1] *See* 42 U.S.C. § 423(a). The Social Security Act's Supplemental Security Income ("SSI") is a separate and distinct program. SSI is a general public assistance measure providing an additional resource to the aged, blind, and disabled to assure that their income does not fall below the poverty line.[2] Eligibility for SSI is based upon proof of indigence and disability. *See*

---

[1] DIB is authorized by Title II of the Social Security Act, and is funded by Social Security taxes. *See* Social Security Administration, Social Security Handbook, § 136.1, *available at* http://www.ssa.gov/OP_Home/handbook/handbook.html
[2] SSI benefits are authorized by Title XVI of the Social Security Act and are funded by general tax revenues. *See* Social Security Administration, Social Security Handbook, §§ 136.2, 2100, *available at* http://www.ssa.gov/OP_Home/handbook/handbook.html

42 U.S.C. §§ 1382(a), 1382c(a)(3)(A)-(C). However, despite the fact they are separate programs, the law and regulations governing a claim for DIB and a claim for SSI are identical; therefore, claims for DIB and SSI are treated identically for the purpose of determining whether a claimant is disabled. *Patterson v. Bowen*, 799 F.2d 1455, 1456 n. 1 (11th Cir. 1986). Applicants under DIB and SSI must provide "disability" within the meaning of the Social Security Act which defines disability in virtually identical language for both programs. *See* 42 U.S.C. §§ 423(d), 1382c(a)(3), 1382c(a)(3)(G); 20 C.F.R. §§ 404.1505(a), 416.905(a). A person is entitled to disability benefits when the person is unable to

> Engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months.

42 U.S.C. §§ 423(d)(1)(A), 1382c(a)(3)(A). A "physical or mental impairment" is one resulting from anatomical, physiological, or psychological abnormalities which are demonstrable by medically acceptable clinical and laboratory diagnostic techniques. 42 U.S.C. §§ 423(d)(3), 1382c(a)(3)(D).

The Commissioner of Social Security employs a five-step, sequential evaluation process to determine whether a claimant is entitled to benefits. *See* 20 C.F.R. §§ 404.1520, 416.920 (2010).

(1) Is the person presently unemployed?

(2) Is the person's impairment(s) severe?

(3) Does the person's impairment(s) meet or equal one of the specific impairments

set forth in 20 C.F.R. Pt. 404, Subpt. P, App. 1?[3]

(4) Is the person unable to perform his or her former occupation?

(5) Is the person unable to perform any other work within the economy?

An affirmative answer to any of the questions leads either to the next question, or, on steps three and five, to a finding of disability. A negative answer to any question, other than step three, leads to a determination of "not disabled."

*McDaniel v. Bowen*, 800 F.2d 1026, 1030 (11th Cir. 1986).

The burden of proof rests on a claimant through Step 4. *See Phillips v. Barnhart*, 357 F.3d 1232, 1237-39 (11th Cir. 2004). Claimants establish a prima facie case of qualifying disability once they meet the burden of proof from Step 1 through Step 4. At Step 5, the burden shifts to the Commissioner, who must then show there are a significant number of jobs in the national economy the claimant can perform. *Id.*

To perform the fourth and fifth steps, the ALJ must determine the claimant's Residual Functional Capacity (RFC). *Id.* at 1238-39. RFC is what the claimant is still able to do despite his impairments and is based on all relevant medical and other evidence. *Id.* It also can contain both exertional and nonexertional limitations. *Id.* at 1242-43. At the fifth step, the ALJ considers the claimant's RFC, age, education, and work experience to determine if there are jobs available in the national economy the claimant can perform. *Id.* at 1239. To do this, the ALJ can either use the Medical

---

[3] This subpart is also referred to as "the Listing of Impairments" or "the Listings."

Vocational Guidelines[4] ("grids") or hear testimony from a vocational expert (VE).  *Id.* at 1239-40.

The grids allow the ALJ to consider factors such as age, confinement to sedentary or light work, inability to speak English, educational deficiencies, and lack of job experience.  Each factor can independently limit the number of jobs realistically available to an individual.  *Id.* at 1240.  Combinations of these factors yield a statutorily-required finding of "Disabled" or "Not Disabled."  *Id.*

### III.  ADMINISTRATIVE FINDINGS AND CONCLUSIONS

Plaintiff was 47 years old, stood five feet five inches tall, and weighed 241 pounds at the time of the administrative hearing.  (Tr. 33).  She received a monthly retirement check from a tire company where she previously worked in the amount of $1,908.  (Tr. 34).  Keith testified that she fell at work on July 16, 2008, and that her doctor took her "out of work" the next day. (Tr. 35).  Keith wore a brace on her left knee.  (Tr. 43).  She said that she used a cane "occasionally".  (Tr. 43).  Plaintiff stated that she could only lift 15 pounds.  (Tr. 36).[5]  Keith said that her daughter did most of the grocery shopping  (Tr. 36)[6], but stated that she cooked once a week (Tr. 36) and drove.  (Tr. 43).  Keith also testified that she and her treating orthopedic surgeon, Dr. Whatley, had discussed the possibility of knee replacement surgery.  (Tr. 40).

The ALJ followed the five-step sequential evaluation process for evaluating disability claims.  *See* 20 C.F.R. § 404.1520(a)(4).  As relevant here, the ALJ found that

---

[4] *See* 20 C.F.R. pt. 404 subpt. P, app. 2; *see also* 20 C.F.R. § 416.969 (use of the grids in SSI cases).

[5] Keith had previously admitted she could lift up to 25 pounds.  (Tr. 157).

[6] Keith had previously admitted she does grocery shopping each week for about one hour.  (Tr. 173)

Plaintiff did not meet or medically equal any of the impairments listed at 20 C.F.R. pt. 404, subpt. P, app.1, and specifically found that Plaintiff did not meet or medically equal the requirements of Listing 1. 02(A)[7] because she had not shown an inability to ambulate effectively, as defined by the regulations.   (Tr. 17-19).   The ALJ further found that Plaintiff could no longer do her past work as a trimmer in a tire factory, but that the allegations regarding disabling limitations (which would preclude all work activity) were not fully credible.   (Tr.  20).   The ALJ concluded that Plaintiff retained the ability to do a reduced range of light work, and hence was not disabled under the Act.   (Tr. 19, Finding 5; Tr. 25, Finding 11).

## IV.  MEDICAL HISTORY

Dr. James Whatley, Jr., is Plaintiff's treating orthopedic surgeon.   In 2008, Dr. Whatley interpreted an MRI as showing a medial meniscus tear and performed an arthroscopic meniscectomy on July 28, 2008.   (Tr. 286).   By August, 2008, Plaintiff was making progress in therapy, but Dr. Whatley directed that she remain out of work,

---

[7]  Listing 1.02(A) of 20 C.F.R. Part 404, Subpart P Appendix 1 provides Presumptive disability is established if the following medical criteria are established:

   "1.02   Major dysfunction of a joint due to any cause . . .

   (A) Involvement of one major peripheral weight bearing joint . . . **resulting in inability to ambulate effectively, as defined in ¶ 1.00 (B)(2)(b) . . . "** 20 C.F.R § 404.1525, Appendix 1¶ 1.02(A)

Section 1.00(B)(2)(b) provides as follows:

   "To ambulate effectively, individuals must be capable of sustaining a reasonable walking pace over a sufficient distance to be able to carry out activities of daily living.  They must have the ability to travel without companion assistance to and from a place of employment or school.  Therefore, examples of ineffective ambulation include, but are not limited to, the inability to walk without the use of a walker, two crutches or two canes, the inability to walk a block at a reasonable pace on rough or uneven surfaces, the inability to use standard public transportation, the inability to carry out routine ambulatory activities, such as shopping and banking, and the inability to climb a few steps at a reasonable pace with the use of a single hand rail.  The ability to walk independently about one's home without the use of assistive device."

continue therapy, and return in four weeks.  (Tr. 283).  In September, 2008, Dr. Whatley noted that the plaintiff was experiencing a lot of arthritic pain in her knee and he directed that she proceed with Euflexxa injections, remain out of work and return later for re-check.  (Tr. 282).  Also in September, Dr. Whatley released Plaintiff from physical therapy and the therapist noted that she had increased range of motion, decreased pain, improved functional abilities, improved mobility, improved gait, and weight bearing status.  (Tr. 289-90).

In March, 2009, Dr. Whatley observed that Plaintiff was having a lot of pain and soreness in both knees and noted that she was trying to work on her retirement as she had worked at the same place for 25 years and has "advancing osteoarthritis."  (Tr. 276).  In May 2009, Dr.Whatley observed that "[b]oth knees are hurting her pretty significantly. She is controlled with Relafen and Ultram for pain."  He also noted that they would "schedule her for knee replacement once she gets to the point where she is having significant pain and discomfort."  (Tr. 275).  In July 10, 2010, Dr. Whatley again noted Plaintiff has "osteoarthritis of both knees" and that she wants to "get them fixed" in September.  (Tr. 271).  Plaintiff developed some heart issues in 2009 which caused deferment of her knee replacement.  (Tr. 330).  Dr. Whatley continued to monitor Plaintiff.  In June, 2010, he noted that Plaintiff's "knees are about the same.  Swelling is down since she has been taking the medicine.  She likes to walk everyday.  She still gets tingling in her knees."  (Tr. 325).

In August, Plaintiff saw Dr. David A. McLain, a Birmingham Rheumatologist for a consultative medical examination. (Tr. 352-357). Plaintiff's attorney specifically asked Dr. McLain to opine

> as to whether or not Ms. Keith's degenerative arthritis of the knees bilaterally (coupled with morbid obesity) would tend to meet or equal the requirements of . . . [Listing] 1.02 (A). If Ms. Keith's medical profile does satisfy the requirements of this regulation section, simply make a note of that fact in the report that you prepare.

(Tr. 351). On examination, Dr. McLain noted Plaintiff had tenderness in her back and knees, a tender but supple neck, normal heart rhythm, regular and symmetric pulses in her arms and legs, a normal gait and station, and intact reflexes and sensation. X-rays of her knees and back showed degenerative changes. Dr. McLain assessed her with "[m]oderately severe" arthritis of the knees and opined that she was "Totally Disabled From Any Employment". (Tr. 354). However, Dr. McLain did not opine that Plaintiff met or medically equaled a listing (Tr. 352-357), and affirmatively found that she did not need an assistive device to walk. (Tr. 357).

Dr. Jack Evans, a qualified medical expert, testified at the hearing before the ALJ that plaintiff did suffer degenerative arthritis of both knees with surgery on one knee; (Tr. 46), but that he did not believe that the plaintiff's knee problem would satisfy the requirements of ¶ 1.02 (A) of the "Listing of Impairments" "either singly or in combination, but she is significantly impaired." (Tr. 47). Rather he testified

> "I'm of the opinion that she could do light work, but further limited to stand, walk only 2 hours. So to summarize that, I think she could sit for an hour, total 8 hours a day, she could stand and walk only 2 hours of the day."

(Tr. 47).  In response to further questioning, Dr. Evans testified that Keith could walk only ten minutes at a time and stand maybe 30 minutes at a time. (Tr. 50).

## V.  ISSUES

Keith raises two issues for judicial review:

(1)   Whether the ALJ committed an error of law by failing to apply ¶ 1.02(A) of the Listing of Impairments in this case?  (*See* Doc. 12 at 3-11).

(2)   Whether the Commissioner's decision should be reversed because the ALJ failed to properly apply the three-part pain standard established by the Eleventh Circuit for adjudicating complaints of pain?  (*See* Doc. 12 at 11-13).

## VI. DISCUSSION

**The ALJ properly evaluated whether Keith met her burden of demonstrating that she met or medically equaled Listing 1.02 (A).**

Keith argues that the ALJ erred because he failed to apply Listing 1.02(A) to the facts of this case.  However, Plaintiff is incorrect; not only did the ALJ apply this listing, but he considered specific record facts in concluding that Plaintiff did not have an "inability to ambulate effectively."[8]  (Tr. 17).  Indeed, the ALJ correctly recognized that

---

[8] "1.02  Under Section 1.02(A) of 20 C.F.R. Part 404, Subpart P Appendix 1, Presumptive disability is established if the following medical criteria are established:
  Major dysfunction of a joint due to any cause . . .

  (A) Involvement of one major peripheral weight bearing joint . . . **resulting in inability to ambulate effectively, as defined in ¶ 1.00 (B)(2)(b) . . . "** 20 C.F.R § 404.1525, Appendix 1¶ 1.02(A)

Section 1.00(B)(2)(b) provides as follows:
  "To ambulate effectively, individuals must be capable of sustaining a reasonable walking pace over a sufficient distance to be able to carry out activities of daily living.  They must have the ability to travel without companion assistance to and from a place of employment or school. Therefore, examples of ineffective ambulation include, but are not limited to, the inability to walk without the use of a walker, two crutches or two canes, the inability to walk a block at a reasonable pace on rough or uneven surfaces, the inability to use standard public transportation,

numerous physicians observed Plaintiff walk normally (and without an assistive device). (Tr. 17 citing Tr. 270, 302, 325, 354).  The ALJ also correctly observed that, during an exercise stress test, Plaintiff was able to walk for over seven minutes on an inclined treadmill.  (Tr. 17 citing 302; *see also* Tr. 53 (describing an exercise stress test)).  The ALJ also noted Plaintiff's admissions that she did not use a cane, walker, or crutches (Tr. 18 citing 176), that on a weekly basis she goes to the grocery and drug stores and to church without needing anyone to accompany her, (Tr. 18 citing Tr. 174; *see also,* Tr. 173), and that she "like[d] to walk every day." (Tr. 17 citing Tr. 325).

Moreover, the ALJ relied on the testimony of medical experts in determining whether Keith met or equaled the Listing.  Indeed, Dr. Evans opined that Plaintiff had not demonstrated an "inability to ambulate effectively" and cited specific supporting record evidence.  (Tr. 17; *see,* Tr. 48-49, 53-54).[9]  Additionally, the ALJ noted that in spite of Plaintiff counsel's direct request to Dr. McLain to consider and opine on whether Plaintiff's impairments met the requirements of Listing 1.02(A), Dr. McLain did not make any such finding in his report.  (Tr. 19; *see* Tr. 351, 352-57).  Rather Dr. McLain found that Plaintiff did not need an assistive device to walk.  (Tr. 22; *see* Tr. 357).

---

the inability to carry out routine ambulatory activities, such as shopping and banking, and the inability to climb a few steps at a reasonable pace with the use of a single hand rail.  The ability to walk independently about one's home without the use of assistive device."

[9]Plaintiff now argues that Dr. Evans' testimony concerning her limitations in standing and walking support the conclusion that Keith has an "inability to ambulate effectively".  However, a claimant cannot show "inability to ambulate effectively" merely by showing a general limitation in the ability to walk. *See* 20 C.F.R. pt.404, subpt.P, app. 1 § 1.00 (B)(2)(b); *see also Arrington v. Soc. Sec. Admin.,* 358 F. App'x 89, 94 (11th Cir. 2009)(affirming a finding claimant did not show inability to ambulate effectively in a case where the record included an opinion that a claimant could not stand or ambulate for any "persistent" period of time).  Rather, a claimant must show "insufficient lower extremity functioning . . . to permit independent ambulation without the use of a hand-held assistive device that limits the functioning of both upper extremities."  20 C.F.R. pt. 404 subpt. P, appl. 1 §§ 1.00(B)(2)(b)(1);1.02(A).

Accordingly, the court concludes the ALJ's determination that Keith did not meet or equal Listing 1.02A, and specifically that Keith failed to demonstrate an "inability to ambulate effectively" is one that a reasonable person would accept, and therefore, is supported by substantial evidence.  *Lewis v. Callahan*, 125 F.3d 1436, 1440 (11th Cir. 1997).

### The ALJ Properly applied Regulations and Case Law in Adjudicating Plaintiff's Subjective Complaints of Debilitating Pain and in doing so Properly assessed Plaintiff's Credibility

Keith argues that the ALJ erred in making a determination of her credibility because she failed to properly apply the three-part pain standard.  The Social Security Regulations provide that a claimant's subjective complaints of pain, alone, cannot establish disability.  Rather, the Regulations describe additional objective evidence that is necessary to permit a finding of disability.  *See* 42 U.S.C. § 423(d)(5)(A); 20 C.F.R. § 404.1529.  Interpreting these regulations, the Eleventh Circuit has articulated a "pain standard" that applies when a claimant attempts to establish disability through her own testimony of pain or other subjective symptoms.  This standard requires (1) evidence of an underlying medical condition and either (2) objective medical evidence confirming the severity of the alleged pain arising from that condition or (3) that the objectively determined medical condition is of such a severity that it can reasonably be expected to cause the alleged pain.  *Foote v. Chater,* 67 F. 3d 1553, 1560 (11th Cir. 1995); *Holt v. Sullivan,* 921 F.2d 1221, 1223 (11th Cir. 1991).

The ALJ retains discretion not to credit the claimant's testimony of pain and other symptoms. *See Holt,* 921 F. 2d at 1223. When the ALJ decides not to fully credit the claimant's testimony, the ALJ must articulate the reasons for that decision. *Id.* In other words, even where the medical record includes objective evidence of pain, and where the ALJ acknowledges that the claimant experiences some pain, the ALJ may conclude that the degree of pain is not disabling in light of all the evidence. *See Macia v. Bowen*, 829 F.2d 1009, 1011 (11th Cir. 1987). Indeed, it is not inconsistent for the ALJ to find a claimant suffers pain, and yet is not so severely impaired as to meet the stringent test for disability imposed by the Act. *See Arnold v. Heckler,* 732 F. 2d 881, 884 (11th Cir. 1984).

In his decision, the ALJ stated that he considered the Plaintiff's allegations; however, "the Claimant is deemed only partially credible. Accordingly, her allegations have been afforded only partial weight." (Tr. 23). The ALJ identified specific reasons to discount Plaintiff's subjective statements. Indeed, the ALJ noted several inconsistencies in the evidence. (Tr. 22-24). *See Anderson v. Astrue,* 2007 WL 5002066 at *12 (N.D. Fla. Nov. 9, 2007) Report and Recommendation adopted by *Anderson v. Astrue,* 2008 WL 74032 (N.D. Fla. Mar. 11, 2008) (where the ALJ articulated inconsistencies between Plaintiff's testimony regarding her subjective complaints and other record evidence, the ALJ's credibility finding was affirmed.)

Specifically, the ALJ noted Plaintiff's testimony that her "knees swell every day." (Tr. 24, 40). However, the ALJ was unpersuaded by the accuracy with which Keith reported her symptoms because the treatment reports do not document regular swelling. (Tr. 24, 219, 223, 275-76, 325). Rather, the treatment reports showed that Plaintiff's anti-

inflammatory medication has been effective in reducing swelling (Tr. 24, 325) and that her pain was also "controlled" with medication.  (Tr. 24; 275-76).  Additionally, the ALJ noted Keith originally stated in her "disability report" that she could lift up to 25 pounds (Tr. 23, 157), but at the hearing she testified she could lift only 15 pounds.  (Tr. 23, 36). The ALJ concluded that the medical record did not document deterioration in Plaintiff's condition which would account for this inconsistency, but rather demonstrated that her condition had responded to physical therapy and medication.  (Tr. 23, 219, 220, 242, 283, 289-290, 293).  *See* SSR 96-7P, 1996 WL 374186, at *6-7 (stating an ALJ may consider the objective medical evidence in evaluating credibility.)    Additionally, the ALJ recognized that although Dr. Whatley found Keith could not return to her past strenuous work as a tire trimmer, none of Plaintiff's treating physicians opined that she was precluded from all work.  (Tr. 23).  Thus, the court concludes that because of the ALJ's reasons, which were supported by record evidence, Keith's argument that the ALJ did not properly articulate and apply the Eleventh Circuit's pain standard must fail.  *See Wilson v. Barnhart,* 284 F. 3d 1219, 1227-28 (11th Cir. 2002) (upholding ALJ's credibility evaluation which discounted plaintiff's "subjective assertions of pain.").

The court also notes that Keith stated she did not use a cane, walker, or crutches (Tr. 18 citing 176), that on a weekly basis she goes to the grocery and drug stores and to church without needing anyone to accompany her, (Tr. 18 citing Tr. 174; *see also,* Tr. 173), a d that she "like[d] to walk every day." (Tr. 17 citing Tr. 325).  Thus, the court also concludes that Keith's non-work activities do not support her claims of debilitating pain. *See Dyer v. Barnhart,* 395 F.3d 1206, 1212 (11th Cir. 2005) (consideration of claimant's

daily activities, symptom frequency, and medication types and dosages were sufficient reasons for finding plaintiff not credible.)   Accordingly, the court also concludes that Keith's self-reported activities of daily living support the ALJ's decision to discredit her complaints regarding the intensity, persistence, and limiting effects of that pain.

## VII. CONCLUSION

Pursuant to the findings and conclusions detailed in this Memorandum Opinion, the Court concludes that the ALJ's non-disability determination is supported by substantial evidence and proper application of the law.  It is, therefore, **ORDERED** that the decision of the Commissioner is **AFFIRMED.**   A separate judgment is entered herewith.

DONE this 31st day of July , 2012.

/s/ Terry F. Moorer
TERRY F. MOORER
UNITED STATES MAGISTRATE JUDGE